### McLAIN *v.* OATMAN.

1. BROKERS—FRAUD—REFORMATION OF CONTRACT.

Where plaintiff agreed with a broker to buy a farm, which the latter was to get at the lowest price and on the best terms obtainable, but instead conspired with his wife to buy the farm and resell it to plaintiff on contract at twice the purchase price, the scheme was a fraud upon plaintiff and he is entitled to have the contract reformed and specifically enforced according to the original agreement.[1]

2. SAME—WAIVER OF FRAUD.

Where plaintiff acted with reasonable promptness after learning of defendants' fraud, there is no merit in their contention that the fraud was waived by plaintiffs' acceptance of a contract from defendant wife rather than from the owner of the farm.[2]

Appeal from Muskegon; Vanderwerp (John), J. Submitted April 16, 1925. (Docket No. 98.) Decided July 16, 1925.

---

[1]Brokers, 9 C. J. § 39 (Anno); [2]Id., 9 C. J. § 39 (Anno).

Bill by Cyrenius A. McLain against Charles Oatman and another to reform a land contract and for specific performance thereof. From a decree for plaintiff, defendants appeal. Affirmed.

*George H. Cross*, for plaintiff.

*F. E. Wetmore*, for defendants.

MCDONALD, C. J.    The plaintiff is a farmer living in Muskegon county, Michigan.    The defendants are husband and wife and are engaged in the real estate business in the village of Holton, county of Muskegon. In 1921, the plaintiff was living in the State of Colorado.    In December of that year he went to Holton to buy a farm.    He was shown several farms by the defendant Charles Oatman, and finally decided to buy the McFadden place consisting of 160 acres about four miles from Holton.    Mr. McFadden lived in Florida and no one was occupying the farm at that time.    It was not listed with Oatman, but he said that he could sell it to the plaintiff.    The agreement, as claimed by the plaintiff, was that he was to buy the farm at McFadden's price, providing that it should not exceed $1,600; that Oatman was to get it for him at the lowest price and on the best terms obtainable; and that with this understanding he paid Oatman $600 to be applied on the purchase price and returned to Colorado.    The money was paid December 23, 1921.    On the following day the defendant Carrie Oatman wired Mr. McFadden an offer of $800 for the farm, $300 of which she proposed to pay down and to give a mortgage for the balance.    The offer was accepted.    She received a deed and gave back the mortgage.    Charles Oatman then wrote the plaintiff for an additional payment of $100 to close the deal. The money was forwarded and Oatman sent the plaintiff a contract to be executed calling for the payment

of $1,600 as the purchase of the farm, acknowledging the payment of $700 thereon and providing that the balance should be paid in yearly payments of $100 with interest at six per cent.  In this contract, Carrie Oatman's name appeared as vendor.  It is the plaintiff's claim that when he signed the contract he believed that he was acquiring the farm at the lowest price for which Mr. McFadden was willing to sell it, but that because of the fraudulent representations of the defendants he was induced to pay double that amount.  The plaintiff returned to Holton in December, 1922.  In January, 1923, he paid the first yearly payment of $100 with interest.  He says that as the real consideration for the purchase of the farm was $800, but that through the fraud of defendants it was stated in the contract to be $1,600, that it should be reformed so as to conform to the actual agreement of the parties, and that as he has paid the full purchase price he is entitled to his deed.  To secure a reformation of the contract and to compel a conveyance to him without further payment, he brought this action.  The defendants deny the agreement as claimed by the plaintiff.  They say that he agreed to pay $1,600 and that the farm was well worth that amount; that there was no fraud, but if there was it was waived by the subsequent contract of the plaintiff; that if the agreement was as claimed by the plaintiff there was an entire change in the agreement when plaintiff accepted a contract from Carrie Oatman, and that she was not bound by her husband's agreement to purchase the farm from McFadden.  The defendant Charles Oatman says that his wife purchased the farm from McFadden without his knowledge or consent and that he did not know how much she had paid for it.  The circuit judge found for the plaintiff and entered a decree granting

the relief prayed for. From this decree the defendants have appealed.

The record shows beyond question that these two defendants conspired to defraud the plaintiff. When Oatman accepted a deposit of $600 from the plaintiff on the understanding that he was to get the farm for him as cheap as possible, he knew that McFadden's price was $800, for he had been told so by Mr. Tomaris, the former custodian. To conceal the true price from the plaintiff he had his wife buy the property, take the title in her name and resell it on contract to him for $1,600. If the agreement between the plaintiff and Oatman meant anything, the plaintiff was to get the farm for $800 which the circuit judge found to be about its real value. As the circuit judge remarked after listening to the testimony, "the whole scheme was a fraud on the plaintiff and should not be allowed to stand."

The contention that the plaintiff waived the fraud by his subsequent conduct is wholly without merit. He acted with reasonable promptness when he learned of the defendants' fraud. He investigated the rumors that came to him and when he learned the facts began this suit. He is not here asking for a rescission of the contract. He simply asks that he be put in the same position that he would have been in if defendants had acted on the square. In other words, he wants the defendants to perform the agreement as made. The price that the plaintiff was to pay was McFadden's price, which was $800. The plaintiff has already paid that amount and is entitled to a deed of the farm. The defendants paid McFadden $300 and gave a mortgage for the balance, on which there is now unpaid $400 and interest. The court decreed that the plaintiff should take the property subject to this mortgage, and that the defendants should repay to him the amount that they did not turn over to McFadden, so

that the purchase price to the plaintiff would be $800 according to the agreement.

We think that the circuit judge made a just and sensible disposition of the case and that the defendants should not complain because they are not allowed to profit by their fraud.

The decree is affirmed, with costs to the plaintiff.

Cʟᴀʀᴋ, Bɪʀᴅ, Sʜᴀʀᴘᴇ, Mᴏᴏʀᴇ, Sᴛᴇᴇʀᴇ, Fᴇʟʟᴏᴡꜱ, and Wɪᴇꜱᴛ, JJ., concurred.